IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMY WELCH | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § Case No. 4:10cv365 |
| | § |
| KENNETH DALE JANNERETH, LYNN DALE STUCKY, LORI ANN STUCKY, ANIMAL HOSPITAL ON MILAM ROAD, P.C., D.V.M. and ANIMAL HOSPITAL ON MILAM ROAD EAST, L.P., D.V.M. | § § § § § § |
| Defendants. | § |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Defendant Kenneth Dale Jannereth (hereinafter "Jannereth") filed a Motion for Summary Judgement (Dkt. 24). The remaining defendants, Lynn Dale Stucky, Lori Ann Stucky, Animal Hospitals on Milam Road P.C. D.V.M. and L.P. D.V.M. have also filed a Motion for Summary Judgment (Dkt. 57). As set forth below, the Court finds that the motions should be GRANTED on the federal claims and DENIED without prejudice on the state claims in that the Court declines to exercise its supplemental jurisdiction and remands all state claims to the 393rd District Court of Denton County.[1]

The genesis of this action lies in an attempt to collect a $400.00 bill for pet emergency services. Plaintiff took her puppy to the clinic after it was mauled by a German Shepherd. The

---

[1] The Court hereby withdraws its May 19, 2011 Report and Recommendations, Docket Entry 59.

1

puppy died. Evidently Plaintiff was not satisfied with the care and disputed the bill. According to Plaintiff's Complaint, the animal hospital and veterinarian Defendants had Jannereth contact her about the unpaid bill. According to Plaintiff, she felt that Jannereth abused his power of office in attempting to collect the debt and engaged in conduct which bullied and harassed her. Jannereth denies doing anything improper and maintains that his contact was only to try and work things out before a suit was filed. Plaintiff sued Jannereth under 42 U.S.C. § 1983 and all defendants for violations of the Fair Debt Collections Act, the Texas Debt Collection Act and Texas Penal Code § 39.02 and § 39.03.

In his motion, Jannereth raises the defenses of qualified immunity and official immunity to all of Plaintiff's claims. Jannereth claims that as to the state and federal debt collection claims his recorded conversation demonstrates there can be no liability to Plaintiff at all.

Plaintiff takes the position that Jannereth is sued in his individual capacity and not official capacity and therefore the Court need not consider the qualified immunity defenses. These defenses are regularly raised in cases against government officials, who are sued individually, and in most cases are a complete shield against personal liability. *See Colvin v. McDougall*, 62 F.3d 1316, 1318-19 (11th Cir. 1995). Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Serv.'s of City of New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citation omitted).

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom,* 448 F.3d 744, 752 (5th Cir. 2006). "If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *See, e.g., Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000).

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ....'" *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (quoting Section 1983). The statutory requirement of action 'under color of state law' in a Section 1983 action brought against a state official and the 'state action' requirement of the Fourteenth Amendment are identical. *Id.* "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a §1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The Court need not address Jannereth's qualified immunity defense since Plaintiff has not sufficiently pled nor shown that the acts of Jannereth deprived her of her rights, privileges and immunities afforded a citizen. Even if the Court could glean some procedural due process claim abridged by Jannereth, Texas appears to provide a post-deprivation remedy: a claim for tortuous interference with contract which would provide Plaintiff with a chance to seek compensation for any deprivation. *McClure v. Biesenbach*, 355 F. App'x. 800 (5th Cir. 2009). It is axiomatic that a plaintiff cannot succeed in a Section 1983 claim if she fails to demonstrate a causal connection between the state official's allegedly wrongful action and her deprivation of life, liberty, or property. *Reimer v. Smith,* 663 F.2d 1316, 1322 n.4 (5th Cir. 1981). According to the evidence before the Court, the Animal Hospital Defendants filed a claim in JP court against Welch and a jury returned a verdict against Plaintiff on the unpaid bill. Not only was she held responsible for the $400.00 bill she also had to pay the Hospital $1,500.00 in attorney fees.

There is some evidence in the record that Lori Stuckey who is the business manager for the Hospitals would contact Jannereth about unpaid bills and attempt to have him call the debtors. Jannereth calls this a "courtesy call." The Court finds this practice to be irregular and possibly improper but the question is whether it amounts to a federal violation. The parties have furnished transcripts of the conversations. The first conversation is actually a message left by Jannereth to Mark Welsh, Amy's husband. In that message Jannereth tells Mark that he has been contacted by Lori concerning the bill. He also says that if this is not taken care of Lori will "file on him." There is never any threat that Jannereth will arrest or detain anyone. Amy then calls Jannereth. All Jannereth says is that the merchants can file suit for the bill or Lori could file for theft of services. Amy tells Jannereth that she didn't even write a check and Jannereth states he doesn't know what

4

the circumstances were but his call was simply a "courtesy call." He also tells Amy that she is not in trouble. He is merely telling her what Lori could do. Again he tells her that he is only letting her know what might happen. Of course much of this is in response to Amy's persistent questioning. He tells her to call Lori and get something worked out. Nowhere in the conversation is there any threat of arrest by Jannereth. No action by Jannereth resulted in the loss of Plaintiff's property. Some cases have even held that an officer is entitled to qualified immunity even when threatening to arrest a person in order to resolve a private dispute. *See Bouldin v. Logan Township*, 2006 WL 770572 (D.N.J. Mar. 27, 2006); *Smithies v. Bialogowy*, 2001 U.S. Dist. Lexis 22959 (D. Conn. Dec. 19, 2001). But as noted above, the Court need not address the qualified immunity issue. The Court finds that, based on the record before it, Defendant Kenneth Dale Jannereth is entitled to summary judgment on Plaintiff's Section 1983 claim. As to Lynn Dale Stuckey and the Hospital Defendants there has been no evidence that they violated any of Amy's rights. Since Jannereth is not liable, they cannot be liable. The same holds true for Lori Stuckey. While the Fifth Circuit recognizes that a private person can be liable under section 1983 there must be a showing that the citizen conspired with or acted in concert with state actors in that there was an agreement between the private party and public defendants to commit an illegal act and a deprivation of constitutional rights. *See Priester v. Lowndes Cnty.*, 354 F.3d 413, 420 (5th Cir. 2004). At best, Welch points out that she felt intimidated by the call. She also states that the right violated is a violation of 15 U.S.C.§§ 1692e(2)(A) and 1692e(5). However, even if Jannereth violated the various provisions of the Fair Debt Collection Act, a violation of a federal law is insufficient for redress through Section 1983. *See Culliver v. Taylor*, 503 F.3d 397 (5th Cir. 2007). Again, there has been no showing of a violation since there has been no abridgement of Amy's rights.

**Fair Debt Collection Act**

The next question is whether Jannereth is a debt collector under the Fair Debt Collection Act. Under 15 U.S.C. § 1692a(6), a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692. The statute contains two categories of debt collectors, those who collect debts as their "principal purpose," and those who do so "regularly." *Hester v. Graham*, *Bright & Smith, P.C.*, 289 F. App'x. 35 (5th Cir. 2008). Although Jannereth's motion addresses the immunity defenses, it raises the issue that he is not liable under the Federal Act. There has been no showing that the principal purpose of Jannerth's duties as a constable is to collect debts. That leaves for resolution whether he regularly does so. A person may "regularly" collect debts even if debt collection is not the principal purpose of his business. *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir.1997). [I]f the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity...." *Id.* "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities." *Brown v. Morris,* 243 F. App'x. 31, 35 (5th Cir. 2007); *see also Garrett,* 110 F.3d at 318. However, there is no bright-line rule for identifying one who collects on a regular basis, so courts must make this determination on a case-by-case basis. *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 62 (2d Cir. 2004). A party may be liable if the debt collection services are high in volume even if it amounts to only a small fraction of the party's overall business activities. *See Fouche' v. Shapiro & Massey* L.L.P., 575 F. Supp. 2d 776 (S.D. Miss. 2008). The question is whether Jannereth

regularly attempted to collect debts. In his affidavit (Exhibit A to Motion for Summary Judgment), he states that he was contacted by Lori Stuckey to try and get in touch with Mark Welch before Stuckey filed a suit for the unpaid bill. In the recorded call with Amy (Exhibit 4 to Jannereth's Motion for Summary Judgment) he admits to calling people concerning outstanding bills. In his deposition Jannereth testified that Stuckey asked if he would make some phone calls to some people that she had not heard from in a long time concerning owed debts. (Jannereth depo 21) However, Jannereth testified that there may have been one name other than Welch. (Jannereth depo 22) The trial transcript of Stuckey's testimony demonstrates that she asked Jannereth to call before. (Transcript at 20) However, there is no showing that Jannereth regularly collected debts.[2] There is no pleading that Jannereth is a debt collector or that he regularly collects debts. Plaintiff pleads that he and the other defendants violated certain provisions of the Act. Plaintiff has put forth some evidence that either Jannereth or other constables would call consumers from time to time concerning bills. There is no evidence of how often this occurred. At best there is evidence that Jannereth occasionally assisted the Stuckeys. However, occasionally is the antithesis to regularly. *See Fouche' v. Shapiro & Massey*, supra at 786. Plaintiff has not demonstrated that Jannereth

---

[2] An attorney attempting to collect 639 debts owed another during a nine-month period "regularly" attempts to collect debts owed another and is a "debt collector"); *Ditty v. CheckRite, Ltd., Inc.,* 973 F. Supp. 1320, 1336 (D. Utah 1997) (attorney liable as a debt collector where debt collection represented one third to one half of firm's activities); *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F. Supp. 319, 322 (E.D. Mich.1992) (attorney with large corporate client was a debt collector even though debt collection only represented 4% of the firm's activity); *Nance v. Petty, Livingston, Dawson & Devening,* 881 F. Supp. 223, 225 (W.D. Va.1994) (attorneys not debt collectors where 0.61% of partner's practice and 1.07% of firm's cases involved debt collection); *Mertes v. Devitt,* 734 F.Supp. 872, 873-74 (W.D. Wis.1990) (attorney not a debt collector where he averaged 2 debt collection matters per year, and debt collection comprised less than one percent of his practice);Hester v. Graham, Bright & Smith, 2005 WL 994704 (E.D. Tex. 2005) affirmed in part, vacated in part and remanded, 289 F. App'x. 35 (5th Cir. 2008).

regularly engaged in debt collection practices. At best, he did so occasionally, but this does not fit the description of a debt collector under the Act. Summary Judgment is appropriate on this ground. As to Lori Stuckey, there can be no Section 1983 violation if Amy was not deprived of her rights or privileges of a citizen. Likewise, there can be no conspiracy claim. As to the Federal Act, none of the Stuckey defendants qualify as debt collectors since the term does not include the creditor of the debt or "any officer or employee of a creditor." *See* 15 U.S.C. § 1692a(6). The record is clear that Lori was the business manager for the hospital or hospitals. Further, there is no evidence Lori committed any contact proscribed by the Act. The genesis of this dispute lies in Jannereth's call to the Welch home.

The Court finds that the federal actions should be dismissed. This does not mean that Plaintiff may very well have state claims against the defendants. However, the Court declines to exercise its supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). The remaining state claims are remanded back to the 393rd District Court of Denton County. As for Jannereth's counterclaim, the Court dismisses it sua sponte. The Federal Debt Collection Act does not create an independent cause of action for bad faith filing. *See Coleman v. Credit Mgmt.*, 2011 WL 913210 (N.D. Tex. 2011); *Allen v. Scott*, 2011 WL 219568 (N.D. Tex. 2011). The statute contemplates a post-trial proceeding following an assessment of the merits of Plaintiff's complaint. Jannereth may, if he wishes, present this matter after dismissal of the Federal claim.

Motions granted in part and denied in part. All federal claims are dismissed with prejudice and all state claims are remanded back to the appropriate court for a full hearing on the remaining claims.

## RECOMMENDATION

Based upon the foregoing, the Court RECOMMENDS that Defendant Kenneth Dale Jannereth's Motion for Summary Judgement (Dkt. 24) and Defendants Lynn Dale Stucky, Lori Ann Stucky, Animal Hospitals on Milam Road P.C. D.V.M. and L.P. D.V.M.'s Motion for Summary Judgment (Dkt. 57) be GRANTED as to all federal claims and DENIED as to the state claims and that all federal claims be dismissed for failure to state a claim and all state claims be remanded back to the 393rd District Court for Denton County.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 267-77 (5th Cir. 1988).

*Further, to allow the parties and District Court to address the findings in this report and any objections thereto, the final pretrial conference in this matter is continued until September 6, 2011.*

**SIGNED** this 20th day of July, 2011.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE